**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

ASIF KHAN,                                                                22 Civ.

                         Plaintiff,

           -against-                                              **Complaint and Jury Demand**

ARENA SERVICE CO., LLC and QUAESTOR
ADVISORS, LLC,

                         Defendants.

------------------------------------------------------------------X

Plaintiff, Asif Khan ("Plaintiff"), by and through his attorneys, Corey Stark PLLC, complains of defendants, Arena Service Co., LLC ("Arena") and Quaestor Advisors, LLC ("Quaestor") (together "Defendants"), and respectfully sets forth to the Court as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages for Defendants' illegal retaliation against Plaintiff in contravention of Section 922 of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 11-203 ("Dodd-Frank"), after Plaintiff made disclosures that were required or protected under the Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq*. The action also seeks to recover damages for breach of implied contract based on Defendants' retaliation against Plaintiff in express violation of its own policies prohibiting retaliation, and in violation of the New York State Whistleblower Protection Law ("NYWPL") Section 740 of the New York Labor Law, which expressly protects whistleblowers against retaliation.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(4), and 28 U.S.C. Section 1367.

## VENUE

3. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. Section 1391, because the Southern District of New York is the judicial district in the state in which the unlawful employment practices are alleged to have been committed.

## PARTIES

4. At all times hereinafter mentioned Plaintiff was, and still is, a resident of the State of New York.

5. At all times material herein Plaintiff was an "Employee" entitled to protection within the meaning of the New York Labor Law.

6. Arena is a foreign limited liability company with its principal place of business located at 405 Lexington Avenue, 59th Floor, New York, New York.

7. Arena is an "Employer" within the meaning of the New York Labor Law.

8. Quaestor is a foreign limited liability company with its principal place of business located at 405 Lexington Avenue, 59th Floor, New York, New York.

9. Quaestor is an "Employer" within the meaning of the New York Labor Law.

10. Upon information and belief, at all times material herein Arena and Quaestor (together "Defendants") had interrelated operations with common control of operating and management practices.

11. Upon information and belief, at all times material herein Defendants had centralized control of labor relations and employee policies.

12. Upon information and belief, at all times material herein Defendants shared hiring practices and major employment decisions.

13. Upon information and belief, at all times material herein Defendants had a common management.

14. Upon information and belief, at all times material herein Defendants had a common website.

15. This action arises out of Defendants' wrongful, illegal, and tortious conduct within the State of New York.

## **RETALIATION**

16. Plaintiff earned a Bachelor of Science degree in Management from Babson College and Master of Business Administration from Georgetown University McDonough School of Business.

17. Plaintiff has a well-established career as a credit/investment analyst spanning more than two decades.

18. Beginning in May 2021 Plaintiff provided consulting services to Defendants.

19. Defendants recruited Plaintiff in September 2021, and Plaintiff commenced his employment by Defendants with the title or position of Senior Vice President.

20. As a Senior Vice President Plaintiff was responsible for managing a portfolio of private credit and public hybrid investments and leading the restructuring of problem credits.

21. Defendants accepted Plaintiff's services without objection.

22. Plaintiff performed these services for Defendants competently, faithfully, diligently, and consistently above the reasonable performance expectations of Defendants.

23. Arena's Whistleblower Policy requires the internal reporting of any suspected wrongful conduct including: (i) conduct that is suspected to be criminal or fraudulent or in violation of any law, rule, or regulation of any federal, state, or local government body involving Arena's financial statement disclosures, accounting or disclosure controls, or auditing matters; (ii) misappropriation of Arena's funds; (iii) inappropriate accounting auditing practices; (iv) attempts to inappropriately influence independent auditors; (v) any of the foregoing with respect to Arena's clients or investors; or (vi) violations of this policy ("Wrongful Conduct").

24. Arena's Whistleblower Policy also guarantees protection from reprisal for any employee who reports Wrongful Conduct by promising, "No Arena employee may discharge, demote, suspend, threaten, harass or otherwise discriminate against any Arena employee who lawfully and in good faith: (i) reports suspected Wrongful Conduct in accordance with the procedures described in this policy . . ."

25. The policy that supports the reporting of Wrongful Conduct, and the reciprocal promise of protection against any resulting reprisal, imposed an express limitation on a term of Plaintiff's employment that he would be protected against retaliation.

26. On October 15, 2021, Plaintiff reported an attempt by an Arena managing director to use material, nonpublic information in making a trade, which could subject Defendants to liability in accordance with the misappropriation theory of insider trading under the rules of the Securities and Exchange Commission.

27. This report of Wrongful Conduct was made to Arena's Chief Executive Officer and Managing Director and President of Quaestor, among others.

28. Instead of commending Plaintiff for reporting Wrongful Conduct in accordance with Arena's Whistleblower Policy, the Managing Director and President of Quaestor, who was Plaintiff's direct supervisor, told Plaintiff that he should not have recorded in writing this incident of Wrongful Conduct.

29. On November 22, 2021, Plaintiff reported a pump-and-dump scheme (*i.e.*, when a fraudster deliberately buys shares of a very low-priced, thinly traded stock, then spreads false or misleading information to pump up the stock's price, and then dumps its shares, causing the price to fall, leaving investors with worthless or nearly worthless shares of stock) concerning two shell companies in which Defendants were heavily invested.

30. Instead of commending Plaintiff for reporting Wrongful Conduct in accordance with Arena's Whistleblower Policy, the Managing Director and President of Quaestor criticized him and told him, "Something like this cannot be sent."

31. After receiving this admonition, Plaintiff scheduled a call with the Managing Director and President of Quaestor, and stressed during this call that the fraudulent and illegal conduct would expose Defendants to serious liability under the rules of the Securities and Exchange Commission.

32. Immediately after the call, the Managing Director and President of Quaestor began excluding Plaintiff from electronic mail and calls in which he should have been included, and in which he had always been included prior to reporting the Wrongful Conduct.

33. Plaintiff also discovered Defendants' scheme of misrepresenting unrealized gains for shares that were very illiquid and not marketable in order to artificially and fraudulently inflate Defendants' performance record.

34. By mid-January 2022, the Managing Director and President of Quaestor took a leave of absence, and Plaintiff addressed the Wrongful Conduct to his temporary supervisor and asked that the Wrongful Conduct be communicated to Defendants' Chief Compliance Officer.

35. Defendants failed to investigate or address the Wrongful Conduct, which continued unabated.

36. On March 31, 2022, the Managing Director and President of Quaestor, upon returning from his leave of absence, terminated Plaintiff's employment without notice or cause.

37. The Managing Director and President of Quaestor told Plaintiff he was being terminated because his position was being eliminated as there was insufficient work to justify a manager of private credit and public hybrid investments.

38. That the official reason given to Plaintiff for terminating his employment was a pretext for retaliation – Defendants' actual motivation -- is obvious, because Plaintiff's primary responsibility and the vast majority of his work was leading the restructuring of problem credits as evinced by his having been named to the Chapter 11 Delaware liquidating trust oversight committee for a major restructuring effort and because Defendants advertised to hire Plaintiff's replacement immediately after his termination.

39. When challenged about the specious excuse for the termination of Plaintiff's employment, the Managing Director and President of Quaestor admitted that the reports of Wrongful Conduct motivated Defendants' decision to terminate Plaintiff's employment.

**AS AND FOR A FIRST COUNT**
(Dodd-Frank Wall Street Reform Act)

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered "1" through "39" inclusive with the same force and effect as if fully set forth at length herein.

41. Plaintiff made good-faith disclosures/complaints concerning Defendants' attempt to use material, non-public information and pump-and-dump schemes, which were intended to artificially and fraudulently inflate Defendants' performance record.

42. By reporting the attempts to artificially and fraudulently inflate Defendants' performance record through the use of material, non-public information and pump-and-dump schemes, Plaintiff engaged in protected activity under Dodd-Frank.

43. Defendants were aware of Plaintiff's protected reports of fraudulent activity in violation of the rules of the Securities and Exchange Commission as evinced by the admonitions made to him that he should stop making such reports.

44. When Plaintiff nevertheless persisted in reporting Defendants' illegal and fraudulent conduct, Defendants, through their officers, agents, and employees, methodically treated Plaintiff less favorably than similarly situated employees who did not report such activity.

45. Defendants retaliated against Plaintiff for making disclosures/complaints protected under Dodd-Frank.

46. Plaintiff's disclosures/complaints were the motivating factors in Defendants' decision to terminate Plaintiff's employment

47. For retaliation in violation of the Dodd-Frank Act, Plaintiff is entitled to such legal and equitable relief to effectuate the purposes of the Dodd-Frank Act including, *inter alia,* employment reinstatement, liquidated damages, front pay, compensatory damages, interest, and attorneys' fees and costs.

## AS AND FOR A SECOND COUNT
(Breach of Contract)

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered "1" through "39" inclusive with the same force and effect as if fully set forth at length herein.

49. Defendants undertook a contractual duty and obligation to Plaintiff upon receiving his reports of Wrongful Conduct.

50. In return for the reporting of misconduct in accordance with its own policy, Defendants had pledged that it would treat Plaintiff fairly and reasonably and take all reasonable and practical steps to protect Plaintiff from potential or actual retaliation.

51. In reporting the misconduct, Plaintiff acted in good faith, relying not only upon Defendants' express promise that he would not be retaliated against but also upon the express anti-retaliation rules that were a term of, and an express limitation on, his employment.

52. Nevertheless, Defendants retaliated against Plaintiff for reporting the Wrongful Conduct.

53. Plaintiff has fully performed all of the obligations owed to Defendants.

54. Defendants have violated and breached its promise to Plaintiff by taking retaliatory and punitive measures against him for reporting Wrongful Conduct.

55. There is a direct, causal link between Plaintiff's protected reports of Wrongful Conduct and such retaliatory conduct.

56. As a result of Defendants' willful conduct, Plaintiff is entitled to an award of damages, in an amount to be determined at trial.

## AS AND FOR A THIRD COUNT
(New York State Whistleblower Protection Law
Section 740 of the New York Labor Law)

57. Plaintiff repeats and realleges each and every allegation contained in paragraphs of the complaint numbered "1" through "39" inclusive with the same force and effect as if fully set forth at length herein.

58. New York State Whistleblower Protection Law, Section 740 of the New York Labor Law, provides a private right of action against employers who fail to protect their employee whistleblowers from retaliation.

59. Plaintiff made good faith disclosures/complaints concerning Defendants' violations of securities laws.

60. By reporting the attempts to artificially and fraudulently inflate Defendants' performance record through the use of material, non-public information and pump-and-dump schemes, Plaintiff engaged in protected activity under the NYWPL.

61. Defendants were aware of Plaintiff's protected reports of fraudulent activity in violation of the rules of the Securities and Exchange Commission as evinced by the admonitions that he should stop making such reports.

62. After Plaintiff persisted in reporting Defendants' illegal and fraudulent conduct, Defendants, through their officers, agents, and employees, methodically treated Plaintiff less favorably than similarly-situated employees who did not report such activity.

63. Defendants retaliated against Plaintiff for making disclosures/complaints protected under the NYWPL.

64. Plaintiff's disclosures/complaints were the motivating factors in Defendants' decision to terminate Plaintiff's employment.

65. Defendants' violations of the NYWPL were willful, malicious, and wanton.

66.     For retaliation in violation of the NYWPL, Plaintiff is entitled to legal and equitable relief to effectuate the purposes of the NYWPL including, *inter alia,* employment reinstatement, liquidated damages, front pay, compensatory damages, interest, and attorneys' fees and costs.

WHEREFORE**,** Plaintiff respectfully demands the following relief:

a)   a money judgment against Defendants for back pay and front pay;

b)   liquidated damages;

c)   compensatory damages;

d)   attorneys' fees;

e)   punitive damages; and

such further and additional relief as the Court deems just and appropriate under the circumstances.

COREY STARK PLLC

/s/_____
By: Corey Stark
*Attorney for Plaintiff*
110 East 59th Street, 22nd Floor
New York, New York   10022
(212) 324-7305

## JURY DEMAND

Plaintiff demands a trial by jury in this action.

Dated: New York, New York
      May 28, 2022

                              COREY STARK PLLC

                              /s/_____
                              By: Corey Stark (CS-3897)
                              *Attorneys for Plaintiff*
                              110 East 59th Street, 22nd Floor
                              New York, New York  10022
                              (212) 324-3705